# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:21-cv-01825-DCN |
| | ) | |
| PATRICIA ANN BASSFORD and SCOTT LOUIS BASSFORD, | ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiff Raymond James & Associates, Inc.'s ("Raymond James") motion for interpleader, ECF No. 5, and defendant Patricia Ann Bassford's ("Patricia") motion to enjoin defendant Scott Louis Bassford ("Scott") from prosecuting claims in state court, ECF No. 26. For the reasons set forth below, the court grants Raymond James's motion for interpleader and grants Patricia's motion to enjoin.

## I. BACKGROUND

This case arises out of a dispute over the handling and disposition of the estate of Stephen Bassford (the "decedent"). The decedent died on or around February 20, 2021. Prior to his death, the decedent made Patricia the sole beneficiary of his estate and investment accounts. There are two separate lawsuits related to the estate that that are currently pending before the court. One case is related to a Scott's probate petition to annul the decedent's most recent will and be declared the personal representative of the estate.[1] See Bassford v. Bassford, No. 9:21-cv-02955-DCN (D.S.C. 2021) (the "Probate

---

[1] The status of the Probate Action is closely tied to the merits of the motions in this case, and vice versa. The document numbers within this order refer to the numbers as identified in this case, unless otherwise indicated.

1

Action"). The other case is related to an allegedly defamatory statement made by plaintiff in relation to the decedent's alleged designation of defendant as joint owner of a checking account. See Bassford v. Bassford, No. 9:21-cv-02351-DCN (D.S.C. 2021).

Scott—a citizen and resident of Decorah, Iowa—was the decedent's only child and, according to Scott, he and the decedent maintained a close relationship. In July 2015, the decedent executed a will providing that Scott would serve as "the executor of the Will" (the "2015 Will") and be the sole beneficiary of the estate. Probate Action, ECF No. 1-1, Compl. ¶ 13. Thereafter, the decedent began dating Patricia—a citizen and resident of Beaufort County, South Carolina—and they were married on November 7, 2018. On March 15, 2019, decedent allegedly signed a new will, leaving all that he owned to Patricia (the "2019 Will"). Scott contests the validity of the will and claims that the decedent and Patricia signed a prenuptial agreement prior to their marriage.

On March 22, 2021, the Beaufort County Probate Court granted Patricia's application for informal appointment as the personal representative of the decedent's estate. See id. ¶ 6. On May 24, 2021, Scott filed a petition for formal appointment as the personal representative. See id. ¶ 8. Patricia removed that case, the Probate Action, to this court on September 14, 2021. Probate Action, ECF No. 1.

Raymond James is a financial services firm incorporated under the laws of Florida and with a principal place of business in St. Petersburg, Florida. The decedent held three investment accounts with a division of Raymond James—two brokerage accounts (with account numbers ending in 626 and 348) and one individual retirement account ("IRA") (account number ending in 132) (together, the "Raymond James funds"). On February 10, 2021, Raymond James received a notarized and undated note purportedly executed by

the decedent. ECF No. 1-4. The note requested that Raymond James change the beneficiary of the decedent's accounts from Scott to Patricia, with the change effective as of January 6, 2021. Raymond James responded that the note did not satisfy its requirements for changing an account's beneficiary. Then, on February 22, 2021, Raymond James received a UPS envelope, dated February 19, 2021, that contained a transfer on death ("TOD") form for one of the decedent's brokerage accounts (ending in 626) and an IRA beneficiary change form for his IRA (ending in 132). On February 24, 2021, Raymond James received another UPS envelope, dated February 23, with a TOD form for the decedent's other brokerage account (ending in 348) and another version of the IRA beneficiary form for the IRA (ending in 132). Each of the forms was notarized by third-party defendant Catherine V. Bailey ("Bailey").

According to the complaint in this case, Raymond James is in possession of funds exceeding $500, and due to the conflicting claims between Scott and Patricia, it has been "unable to determine, without hazard to itself, which of the Defendants is entitled to the Funds." ECF No. 1, Compl. ¶ 25. Accordingly, on June 16, 2021, Raymond James filed the instant action, asserting a claim for statutory interpleader pursuant to 28 U.S.C. § 1335. On August 15, 2021, Scott answered the complaint and further asserted a third-party complaint against Bailey and crossclaims against Patricia. ECF No. 11. On August 16, 2021, Patricia answered the complaint and further asserted a counterclaim against Raymond James and a third-party complaint against third-party defendant George Driver Bragnaw, III ("Bragnaw"). ECF No. 13.

As a result of the instant interpleader action, the state probate court filed a consent order in the Probate Action on July 20, 2021. Probate Action, ECF No. 26-2. The consent order stated, in relevant part:

> Given the filing of the Interpleader Action, to avoid duplicity and preserve the time and resources of the Court and the parties, with the consent of the Court, agree as follows:
>
> (1) The pending probate proceeding is stayed, except as to matters of discovery related to the probate estate, that by agreement of the parties, may proceed.
>
> (2) The Court shall retain jurisdiction over all matters of the probate estate administration as well as hear and issue any rulings related to discovery in the probate matters.
>
> (3) The parties have stated that they will answer and appear in the Interpleader Action and may assert additional claims against each other. Since certain claims may be asserted in the Interpleader Action that are currently plead and/or related to claims made in the Amended Formal Proceeding Petition, all parties agree as follows:
>
>    (a) Petitioner [Scott] will have until August 31, 2021, to amend their Formal Petition if they so choose.
>
>    (b) Respondent [Patricia] shall have until September 20, 2021 to move, plead or otherwise defend in response to either the pending Formal Petition or, if amended, to the amended Formal Petition.
>
> (4) Respondent [Patricia] shall file the Inventory and Appraisement on or before July 12, 2021.
>
> (5) Respondent [Patricia] shall file the Non-Probate Inventory on or before October 7, 2021.

Id. at 1–2.

On June 17, 2021, Raymond James filed a motion for interpleader in the instant action. ECF No. 5. Patricia responded to the motion on August 16, 2021, ECF No. 14, and Raymond James replied on August 30, 2021, ECF No. 17. Scott did not file a response, and the time to do so has now expired. On October 19, 2021, the court requested supplemental briefing by email from the parties on the applicability of the

probate exception to the Interpleader Action. Scott, Patricia, and Raymond James each submitted timely supplemental briefs. ECF Nos. 38–40. On September 14, 2021, Patricia filed her motion to enjoin per 28 U.S.C. § 2361. ECF No. 26. Scott responded in opposition on September 24, 2021. ECF No. 29. Patricia did not file a reply, and the time to do so has now expired. The court held a telephonic hearing on the pending motions in this case and in the Probate Action on February 8, 2022. ECF No. 42. As such, both motions have been fully briefed and are now ripe for review.

## II.  DISCUSSION

Since Patricia's motion to enjoin Scott under the interpleader statute depends on the existence of a valid interpleader action, the court first addresses Raymond James's motion for interpleader before turning to the motion to enjoin. The court ultimately finds that Raymond James has instituted a proper interpleader action, and accordingly, the court enjoins Scott and Patricia from continuing or pursuing any claims related to the interpleaded funds.

### A. Motion for Interpleader

#### 1. Subject-Matter Jurisdiction

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc., 40 F. App'x 767, 769 (4th Cir. 2002). It "is an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." Id. In a "pure" or "true" interpleader, "the stakeholder makes no claim to a part of the money or property for itself and is 'indifferent' as to which claimant should

receive the money or property." AmGuard Ins. Co. v. SG Patel & Sons II LLC, 999 F.3d 238, 244 (4th Cir. 2021) (quoting Killian v. Ebbinghaus, 110 U.S. 568, 571 (1884)). Instead, the stakeholder asks the court to retain control of the fund while the court determines which party is entitled to the fund. See Tapp v. Minn. Life Ins. Co., 2017 WL 2839636, at *2 (D.S.C. June 29, 2017)

There are two types of interpleader: statutory and rule-based. "For a federal district court to have subject matter jurisdiction over a statutory interpleader suit, the claim must meet the following prerequisites: (1) the amount in controversy exceeds $500; (2) two or more diverse claimants have adverse claims of entitlement to the disputed fund; and (3) the stakeholder deposits the amount due into the Court's registry." One Gas, Inc. v. J.P. Pipeline Constr. Inc., 2018 WL 4222411, at *1 (D. Kan. July 18, 2018) (citing 28 U.S.C. § 1335).

There is no dispute that the first two elements are met here. Raymond James alleges in its complaint that the funds in controversy are valued at an amount greater than $500.[2] Scott is a citizen of Iowa and Patricia is a citizen of South Carolina. There are no other alleged claimants, and as such, the claimants are entirely diverse.

The third element is satisfied as well. Specifically, the interpleader statute provides that the district court shall have original jurisdiction in an interpleader action, provided the plaintiff

> [1] has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or [2] has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned

---

[2] At the hearing, Raymond James indicated that the Raymond James funds were worth approximately $1.7 million.

upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335(a)(1). Of the two options presented in the statute, Raymond James avers that a nominal bond would be more appropriate, given that Raymond James would have to liquidate the investment accounts to deposit their full amount with the court. As such, Raymond James states that if the court grants its motion for interpleader, it will deposit a bond in the amount of $1,000 with the registry of the court. The court finds that the deposit of a bond, rather than the full amount of the accounts, is reasonable. Courts have previously granted interpleader based on a nominal bond when the assets in controversy were held in investment accounts. See UBS Fin. Servs., Inc. v. Banco Popular de P.R., 2017 WL 3500055, at *4 (D.S.C. Aug. 16, 2017) ("The Court agrees with Plaintiff it is better for Plaintiff to deposit a bond rather than the disputed assets because depositing the assets would require liquidating at least a portion of [the] Account, which could result in irreparable harm to [the claimant] in the event she ultimately prevails in this action."). While the amount of the nominal bond may be subject to modification by the court,[3] neither defendant objected at the hearing to setting the amount of the bond at $1,000. Given the consensus, the court finds that $1,000 would be sufficient to preserve the claimants' individual interests and ensure Raymond James will "honor its obligation to preserve the assets." See id.

Accordingly, Raymond James meets each of the requirements for statutory interpleader. Patricia, the only claimant to oppose the motion, does not dispute that the court possesses subject matter jurisdiction over this interpleader action. However, for

---

[3] In UBS, for example, the court determined that a bond in the amount of $10,000 was appropriate

completeness, the court briefly addresses one final aspect of the court's subject matter jurisdiction—the probate exception—before turning to Patricia's arguments for why interpleader is otherwise improper.

"[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311–12 (2006).  As previously noted, the court requested supplemental briefing on whether the probate exception would apply in this case if determining the rightful claimant would require the court to undertake "the probate or annulment of a will."  In their supplemental briefs, all parties agreed that the probate exception does not apply for purposes of the interpleader.  After considering the parties' arguments on the matter, the court agrees that the probate exception does not apply.  As the parties observe, the Interpleader Action would only determine the rightful owner of the Raymond James funds, and the Raymond James funds are not the subject of the 2019 Will.  For example, the IRA beneficiary transfer form specifically states that the agreement "enables an individual's investment assets to bypass probate and be transferred directly to specified heirs under the transfer-on-death (TOD) provisions." ECF No. 1-8 at 7.  The exact same language is found in the transfer form for the brokerage account with the account number ending in 626.  ECF No. 1-7 at 5.  And, as Raymond James points out, "[a]t the time of Decedent's death, his Estate was not the designated beneficiary on the IRA Account or the Brokerage Accounts and therefore these accounts fall outside of the Estate and outside of probate."  ECF No. 40 at 2.

Since the Raymond James funds are not part of the decedent's estate, the court is satisfied that determining the rightful owner of the Raymond James funds will not require the court to make any determination as to the validity of the 2019 Will or otherwise administer the estate. This conclusion accords with the decision of other courts around the country. See, e.g., JPMorgan Chase Bank, N.A. v. Black, 2021 WL 4459482, at *7 (N.D. Ill. Sept. 29, 2021) (determining that the probate exception did not apply in an action to determine the enforceability of payable-on-death beneficiary designations on brokerage accounts); Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc., 918 F.2d 1065, 1072 (2d Cir. 1990) (holding that the probate exception did not preclude federal jurisdiction over statutory interpleader action because (1) the issue concerned whether assets were property of the estate, not how to divide estate property; and (2) the case for exercising federal jurisdiction notwithstanding the probate exception is stronger in interpleader actions than ordinary diversity cases). Finally, the court is also satisfied that this action will not require the court to "dispos[e] of property that that is in the custody of a state probate court," Marshall, 547 U.S. at 312, because Raymond James is in possession of the funds, and, as the court discussed in greater detail in the Probate Order, the state probate court has stayed proceedings and does not appear interested in taking possession of the Raymond James funds at any point. Accordingly, the court finds that the probate exception does not apply and that the court has subject matter jurisdiction of this action.

### 2. Disinterested Stakeholder

Finding that the court has subject matter jurisdiction, the court turns to Patricia's arguments, wherein she principally argues that Raymond James is not a disinterested

stakeholder. In determining the propriety of interpleader, the court must consider whether: "(1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader." Walker v. Liberty Mut. Ins. Co., 2017 WL 1020884, at *2 (D.S.C. Mar. 16, 2017). The court has already determined, supra, it has jurisdiction over the suit. Factors two, three, and four have been addressed by the court in the peripheries of its jurisdictional analysis and are also not in dispute. Therefore, the court only evaluates Patricia's argument as a matter of equitable consideration. See also Lee v. W. Coast Life Ins. Co., 688 F.3d 1004, 1012 (9th Cir. 2012) (cited at ECF No. 14 at 2) ("It is generally recognized that interpleader developed in equity and is governed by equitable principles." (internal quotation marks and citation omitted)).

"In keeping with the equitable nature of interpleader, courts have, in some instances, denied interpleader because the stakeholder contributed to the development of the adverse claims or engaged in inequitable or improper conduct." Fort Dearborn Life Ins. Co. v. Turner for A.R.Y., 2006 WL 8438341, at *5 (E.D.N.C. Dec. 19, 2006); see also Lee, 688 F.3d at 1012 (observing that "many courts have held that those who have acted in bad faith to create a controversy over the stake may not claim the protection of interpleader" and collecting cases); 44B Am. Jur. 2d Interpleader § 7 ("The equitable doctrine of 'clean hands' applies to interpleader actions. The party seeking interpleader must do equity, not have caused the conflicting claims, and be free from blame in causing the controversy."). In support of her argument that Raymond James does not have clean hands, Patricia claims that one of Raymond James's employees, Bragnaw, "repeatedly

10

refused" to honor the decedent's requests to change the beneficiary on the Raymond James accounts in the year prior to his death. ECF No. 14 at 3. Patricia claims that the beneficiary change forms at issue in this case were therefore the product of the decedent's decision to "t[ake] matters into his own hands" following Bragnaw's "willful disobedience of his wishes." Id. at 4. As such, Patricia filed counterclaims against Raymond James and third-party claims against Bragnaw for (1) declaratory judgment that she is the rightful owner, (2) breach of contract, (3) breach of fiduciary duty, (4) negligence and gross negligence, (5) tortious interference with prospective contractual relations and inheritance, and (6) violation of the South Carolina Unfair Trade Practices Act.

        The court finds that the allegations in the counterclaims and third-party claims against Bragnaw are not a bar to the interpleader action. While the Fourth Circuit has not directly weighed in on the matter, the decisions of other courts are instructive. Those courts uniformly agree that the plaintiff's liability, if any, may not attach to the interpleaded funds themselves. See, e.g., Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 264 (3d Cir. 2009) ("[I]nterpleader protection does not extend to counterclaims that are not claims to the interpleaded funds."). Courts also agree that an interpleader plaintiff faces liable only if he or she directly created the conflict. For example, in a case in the Eastern District of North Carolina, the moving defendant, Beverly Turner, made a claim on a life and accidental death insurance policy on behalf of the decedent's and Turner's minor child. Fort Dearborn, 2006 WL 8438341, at *1. Instead of immediately paying out the claim, the plaintiff insurance company offered to retain the life insurance proceeds until the minor child reached the age of eighteen. Id. Eventually, another

defendant, Vanzolla McMurran, submitted a claim for the proceeds on behalf of her minor daughter, who McMurran claimed to be the decedent's other child. Id. The plaintiff filed a complaint for interpleader, and Turner raised estoppel as an affirmative defense, arguing that the plaintiff's actions directly resulted in Turner's decision to decline the funds and thus allowed McMurran to become a claimant. To be sure, Fort Dearborn is not directly analogous, as the court found that there was no allegation suggesting the plaintiff acted in ill will. Id. at *5. Here, Patricia alleges that Bragnaw acted willfully in denying Scott's prior attempts to transfer the accounts. On the other hand, the cases are similar in that the interpleader plaintiff's actions did not directly give rise to the competing claims. See id. (noting Turner's failure to "allege that plaintiff contributed to the development of McMurran's claims"). Despite Patricia's contention that this action would be unnecessary if Bragnaw had honored his fiduciary duty, this action—and the determination of who the funds are distributed to—will ultimately center around the validity of the TOD and change of beneficiary forms from January and February 2021. In other words, Bragnaw's alleged refusal to effectuate the earlier changes does not have anything to do with whether those later forms are valid. As such, "any such claim [against Raymond James] is independent of this interpleader action." See id.

      The case cited by Patricia is not to the contrary. In Lee v. West Coast Life Insurance, the Ninth Circuit distinguished a Third Circuit case that did not permit counterclaims against an interpleader plaintiff because it found that the counterclaimants in Lee were seeking "damages wholly separate and apart" from the interpleader's failure to award them the interpleaded funds. Lee, 688 F.3d at 1014 (distinguishing Hovis, 553

F.3d at 265). Here, however, the court finds that Patricia's counterclaims and third-party claims are more akin to the counterclaims in the Third Circuit case. In Hovis, the counterclaimant was named a beneficiary on the decedent's life insurance policy after the decedent became terminally ill. Hovis, 553 F.3d at 259–60. When the claimant submitted the policy change forms, "he specifically requested that they be processed on an expedited basis, due to [the decedent's] terminal condition." Id. at 260. Due to its internal processes, the life insurance company did not process the changes immediately, and the decedent died before any changes to the policy were made. Id. The insurance company instituted an interpleader action, and the claimant countersued. In the resulting action, the district court analyzed the relevance of the fact that "if [the insurer] had immediately paid[,] . . . [the claimant] would not have brought an action against [the insurer] based on any of the causes of action that were counterclaimed in the instant case." Id. at 264 (quoting Prudential Ins. Co. of Am. v. Hovis, 2007 WL 3125084, at *4 (M.D. Pa. Oct. 23, 2007)). On appeal, the Third Circuit held that each of the counterclaims concerned the insurance company's failure to timely investigate and pay out the proceeds in the claimant's favor, and "[a]s such, none of the counterclaims [wa]s truly independent of who was entitled to the life insurance proceeds." Id. at 264–65. Unlike the Ninth Circuit, which determined that in the action before it, the interpleader's actions caused the controversy, the court finds that the circumstances here mirror the facts before the Third Circuit for reasons discussed above—namely that Patricia's counterclaims and third-party claims are premised on Raymond James's and Bragnaw's failure to award the funds sooner and not necessarily their direct contribution to the controversy.

To be sure, the court recognizes that the case is still in its early stages, and with more time, perhaps Patricia may be able to develop her counterclaims and third-party claims to show they, in fact, "seek damages flowing from [Bragnaw's] . . . failure to correctly execute the . . . change forms." Lee, 688 F.3d at 1014 (emphasis added). As it stands now, the court finds that Patricia has failed to allege how Raymond James is directly responsible for the controversy generated by the TOD forms and IRA beneficiary change forms. But the court will err on the side of caution by leaving a window open for claims to be brought against Raymond James and Bragnaw, although it observes that in such a scenario, an interpleader action would likely be the wrong vehicle for pursuing such relief. Accordingly, the court stays the counterclaims and third-party claims and suggests that Patricia file a separate action if she wishes to pursue any claims against Raymond James or Bragnaw for their alleged breach of contract and breach of fiduciary duty, to the extent those claims can be shown as "independent of who was entitled to the . . . proceeds." Hovis, 553 F.3d at 264. The court notes that under Federal Rule of Civil Procedure 21, "on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." For efficiency, and because the court believes a plaintiff should be the master of her own complaint, the claims discussed above are stayed until the court resolves Raymond James's claim regarding ownership of the funds at issue.

### 3. Good Faith Dispute

Finally, Patricia argues that there is no good faith dispute between the parties to support an interpleader action. Patricia's argument appears to be, in essence, that there is no need for the court to hold onto the interpleaded funds and hear the controversy

14

because Patricia is clearly entitled to the funds. However, the applicable standard for finding a valid interpleader action is whether there are "adverse claimants" and that requirement is clearly satisfied here. The court need not evaluate the merits of Scott's claims at this time because like in any other case, such arguments are better reserved following opportunities for the parties to conduct discovery. Similarly, here, Patricia's substantive arguments are better reserved for later stages of the litigation between Scott and Patricia.

### 4. Attorney's Fees

Finally, the court addresses the issue of attorney's fees. Raymond James seeks attorney's fees to compensate it for bringing this action. "Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Sprague, 251 F. App'x 155, 156 (4th Cir. 2007) (citations omitted). The policy behind this is that the plaintiff should not have to absorb attorney's fees in avoiding the possibility of multiple litigation claims against it. See Stonebridge Life Ins. Co. v. Kissinger, 89 F. Supp. 3d 622, 627 (D.N.J. 2015) ("Because the stakeholder is considered to be helping multiple parties to an efficient resolution of the dispute in a single court, courts find that the stakeholder attorney's fees are justified.") (internal quotation marks and citation omitted). If attorney's fees are granted, the "fee awards are generally drawn from the interpleaded fund itself." Sprague, 251 F. App'x at 157. Counsel for Raymond James will submit an affidavit of the fees and costs incurred in bringing the interpleader action, and the court will grant the attorney's fees if it finds them reasonable. Upon the

grant of attorney's fees, Raymond James will be entitled to deduct the fees from the Raymond James funds.

### B. Motion to Enjoin

Patricia seeks an order pursuant to 28 U.S.C. § 2361 enjoining Scott from prosecuting his existing claims and from instituting any new claims of ownership over the interpleaded funds. Section 2361 provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and <u>enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action</u> until further order of the court.

28 U.S.C. § 2361 (emphasis added). In other words, "[§] 2361 enables a party meeting the requirements of [§] 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed. R. Civ. P., which normally governs the issuance of injunctive relief." N.Y. Life Ins. Co. v. Apostolidis, 841 F. Supp. 2d 711, 720 (E.D.N.Y. 2012) (internal quotations marks and citation omitted). "An injunction against overlapping lawsuits obviously is desirable to ensure the effectiveness of the interpleader remedy [because i]t prevents the multiplicity of actions and reduces the possibility of inconsistent determinations." Sotheby's, Inc. v. Garcia, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992).

In response, Scott argues that Patricia's motion to enjoin is moot "[i]n light of the Notice of Continuance issued by the State probate court." ECF No. 29 at 5. The court disagrees. Even if the notice of continuance barred Scott from continuing his claim over the Raymond James funds in the Beaufort County Probate Court, Scott could still theoretically file an action in another court, which would put Raymond James at risk of

16

multiple or inconsistent judgments.  Moreover, if Scott recognizes that the state probate court's notice of continuance means, as he claims, that he "is essentially enjoined from prosecuting claims in state court," id., then he should have no issue with an order from the court formally enjoining him from proceeding in either state court or any other jurisdiction.

Scott also argues that injunctive relief under 28 U.S.C. § 2361 is only available to the plaintiff in the interpleader action and not to a defendant-claimant like Patricia.  In support, Scott advances multiple arguments stating that an interested stakeholder may not file an action in interpleader.  Scott's arguments appear to be misdirected, however, as Patricia is not the plaintiff in this action, and the court does not view Patricia's motion as an attempt to institute an interpleader action.  While the court identifies no prior case where a claimant, as opposed to the plaintiff, moved at the onset of an interpleader action to enjoin the other claimants from commencing any other actions or proceedings, the District of Maryland previously granted a claimant's motion to enjoin both himself and the other claimant from instituting any further action against the interpleader plaintiff after the court determined the true owner of the disputed funds.  See Wells Fargo Bank, NA v. Dorman Long Tech. Equip., LLC, 2018 WL 1738277, at *5 (D. Md. Apr. 11, 2018), report and recommendation adopted, 2018 WL 4494884 (D. Md. May 2, 2018).  Moreover, granting Patricia's motion is procedurally only one step removed from the court issuing an order on its own determination and enjoining any pending or future proceedings against Raymond James by the claimants—something it would have been likely to do in the absence of Patricia's formal motion.  See Canal Ins. Co. v. Partee, 2007

17

WL 9780545, at *3 (D. Md. Oct. 18, 2007) ("[F]ederal courts [have] broad powers to enjoin claimants from litigating issues involved in the interpleader action.").

Finally, Scott argues that if the court ultimately decides that an injunction restraining the claimants from prosecuting claims in other courts is warranted, it should only be with respect to the interpleaded funds. In so arguing, Scott seems to believe that "Patricia is requesting to enjoin the entire probate court action" wherein "Scott raises claims in addition to a claim of entitlement of the funds in the Raymond James accounts." ECF No. 29 at 10. The court does not read Patricia's motion the same way. Patricia's motion plainly states that it seeks to enjoin Scott from existing and future claims "of ownership of the interpleaded funds" and claims "related to the ownership of the interpleaded fund." ECF No. 26 at 1. The interpleaded funds plainly refer to the Raymond James funds. This understanding was further underscored at the hearing where counsel for Patricia stated she wished for the probate matters to return to state court. While an injunction against continuing the entire probate action would certainly be beyond the scope of the court's jurisdiction, the court finds that Patricia's motion only seeks to enjoin Scott from pursuing claims related to the Raymond James funds and grants the motion accordingly.

### III.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for interpleader and **GRANTS** the motion to enjoin Scott and Patricia from instituting or prosecuting any proceeding in any state or federal court affecting the Raymond James funds. The court issues the following order with respect to this action, to be consistent with the prior findings contained herein:

1. This action shall proceed as an action in interpleader;

2. Raymond James is ordered to secure a bond in the amount of $1,000, payable to the Clerk of Court, United States District Court for the District of South Carolina;

3. Raymond James is adjudicated as not liable to any of the defendants solely with respect to the assets in dispute in this action except to abide by any settlement reached between the parties or final adjudication of this action directing Raymond James as to what action it should take with respect to the assets in dispute;

4. Patricia Bassford's counterclaims asserted against Raymond James and third-party claims asserted against George Driver Bragnaw, III are hereby stayed pending either the filing of a separate action or the resolution of the instant interpleader action;

5. The court's order and the discharge of Raymond James from this interpleader action are not intended to bar any future claims that may be asserted against Raymond James related to either it or its employees' management of the Raymond James funds, independent of the assets in dispute;

6. Defendants, their agents, attorneys, and/or representatives, shall be, and are hereby, permanently enjoined from instituting or prosecuting any proceeding in any jurisdiction against Raymond James on the basis of the Raymond James funds; and

7. Raymond James is awarded its attorney's fees and costs incurred in bringing this interpleader action, to be further determined upon affidavit by Raymond James' counsel of the fees and costs incurred by Raymond James.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 7, 2022
Charleston, South Carolina**

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 7, 2022
Charleston, South Carolina**