**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:21-cv-01825-DCN |
| | ) | |
| PATRICIA ANN BASSFORD and SCOTT LOUIS BASSFORD, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiff Raymond James & Associates, Inc.'s ("Raymond James") affidavit for attorney's fees, ECF No. 45. For the reasons set forth below, the court awards Raymond James $50,616.75 in expenses.

## I. BACKGROUND

This case arises out of a dispute over the handling and disposition of the estate of Stephen Bassford (the "decedent"). The decedent died on February 20, 2021. Prior to his death, the decedent made defendant Patricia Bassford ("Patricia") the sole beneficiary of his estate and investment accounts. Defendant Scott Bassford ("Scott") was the decedent's only child. In July 2015, the decedent executed a will providing that Scott would serve as the executor and be the sole beneficiary of the estate. Thereafter, the decedent began dating Patricia, and they married on November 7, 2018. On March 15, 2019, decedent allegedly signed a new will, leaving all that he owned to Patricia. Scott is currently contesting the validity of the will in state probate court.

Separately from the will, the decedent held three investment accounts with one of Raymond James's divisions; the accounts consisted of two brokerage accounts and

1

one individual retirement account ("IRA") that together, contain the funds in dispute (the "Raymond James funds"). In February 2021, Raymond James received a notarized and undated note, purportedly executed by the decedent, requesting that Raymond James change the beneficiary of the decedent's accounts from Scott to Patricia. ECF No. 1-4. Raymond James responded that the note did not satisfy its requirements for changing an account's beneficiary. According to Patricia, the decedent subsequently provided beneficiary change forms that were notarized and met all the requirements set out by Raymond James, along with a physician's statement attesting to his competency. Scott claims that the signatures on the beneficiary change forms did not belong to the decedent and, in the alternative, that Patricia exerted undue influence over him.

According to the complaint, Raymond James is in possession of funds exceeding $500, and due to the conflicting claims between Scott and Patricia, it has been "unable to determine, without hazard to itself, which of the Defendants is entitled to the Funds." ECF No. 1, Compl. ¶ 25. Accordingly, on June 16, 2021, Raymond James filed the instant action, asserting a claim for statutory interpleader pursuant to 28 U.S.C. § 1335. Id. On June 17, 2021, Raymond James filed a motion for interpleader. ECF No. 5. In that motion, Raymond James requested reimbursement for its fees and costs incurred in bringing the interpleader action. Id. at 4–5. On March 7, 2022, the court granted Raymond James' motion, thus allowing the action to proceed as an action in interpleader. ECF No. 43. In the order, the court preliminary awarded Raymond James expenses but requested an affidavit from Raymond James quantifying its fees and costs so that the court could determine if the amount was reasonable. On March 31, 2022, Raymond James filed its affidavits of attorney's fees. ECF No. 45. Neither defendant

2

objected to the amount of attorney's fees requested by Raymond James. The matter is now ripe for the court's review.

## II.   DISCUSSION

The only issue before the court is the reasonableness of Raymond James's fees and costs. In its order granting the motion for interpleader, the court previously determined that Raymond James is entitled to reimbursement of attorney's fees associated with bringing this action. "Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Sprague, 251 F. App'x 155, 156 (4th Cir. 2007) (citations omitted). The policy behind this reimbursement is that the plaintiff should not have to absorb attorney's fees in avoiding the possibility of multiple litigation claims against it. See Stonebridge Life Ins. Co. v. Kissinger, 89 F. Supp. 3d 622, 627 (D.N.J. 2015) ("Because the stakeholder is considered to be helping multiple parties to an efficient resolution of the dispute in a single court, courts find that the stakeholder attorney's fees are justified.") (internal quotation marks and citation omitted). If attorney's fees are granted, the "fee awards are generally drawn from the interpleaded fund itself." Sprague, 251 F. App'x at 157.

Having previously determined that an award of attorney's fees is appropriate, the court now turns to the reasonableness of Raymond James's requested fees. At the court's request, counsel for Raymond James submitted affidavits calculating the attorney's fees and costs that Raymond James incurred in bringing the interpleader action forward. ECF No. 45, Reeves Aff.; ECF No. 45-1, Erb Aff. Raymond James's

counsel affirmed, in accordance with the time and expense records that are maintained on a daily basis, that attorney's fees were incurred in the amount of $70,178.67.

"[A] stakeholder's award from interpleader should be 'modest' and 'of a relatively small amount simply to compensate for initiating the proceedings.'" Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co., 2020 WL 7395968, at *2 (D.S.C. Dec. 17, 2020) (quoting Mfrs. & Traders Tr. Co. v. Del Conca USA, Inc., 2017 WL 3175567, at *4 (D. Md. July 25, 2017)). Thus, "a stakeholder's award 'should be properly limited to the preparation of the petition for interpleader, the deposit of the contested funds with the court, and the preparation of the order discharging the stakeholder.'" Id. (quoting Del Conca, 2017 WL 3175567, at *4); see Sun Life Assurance Co. of Canada v. Grose, 466 F. Supp. 2d 714, 717 (W.D. Va. 2006) ("In the normal interpleader action, the attorneys' fees awarded will be relatively modest, in as much as all that is necessary to bring an interpleader action is the preparation of a petition, the deposit of the contested funds into court, service on all the claimants, and the preparation of an order discharging the stakeholder.") (internal quotation marks and citation omitted).

To assess attorney's fees, courts compare the requested amount to the "lodestar" amount. Robinson v. Equifax Info. Serv's., LLC, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar amount equals the reasonable hourly rate multiplied by the hours reasonably expended. Id. (citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). District courts evaluate the reasonableness of both rates and hours through twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's

> expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243–44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Although courts should consider all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable. See E.E.O.C. v. Serv. News, Co., 898 F.2d 958, 965 (4th Cir. 1990) (observing that certain factors did not seem to affect the fee award). Moreover, while courts apply the lodestar method to determine the reasonableness of fees in interpleader cases, "[t]he test for determining attorneys' fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in . . . other contexts." See Unum Life Ins. Co. of Am. v. Brookshire, 2015 WL 13229264, at *4 (D.S.C. Dec. 30, 2015), report and recommendation adopted by 2016 WL 8711680 (D.S.C. Jan. 22, 2016), amended by 2016 WL 703933 (D.S.C. Feb. 23, 2016). The court considers each of the factors below.

### A. Time and Labor Expended

Raymond James's billing records indicate that the following individuals worked on matters related to the interpleader: George A. Reeves III ("Reeves"), partner; Davis W. Erb ("Erb"), partner; Jeffrey Csercsevits ("Cserczevits"), of counsel; and Roshel Tuska-Butler ("Tuska-Butler"), paralegal. Although counsel for Raymond James denoted the total amount charged for purposes of this fee petition, they did not break down the total amount of hours expended by each timekeeper along with the charged hourly rate. In breaking down the entries that the court deems relevant to the interpleader action, as discussed infra, the court identifies, for each timekeeper, the

number of hours it includes for purposes of calculating the lodestar amount.[1]  Counsel for Raymond James affirmed that this time was maintained on a daily basis.

Furthermore, counsel for Raymond James correctly recognizes that they may not include legal fees and costs for services unrelated to the interpleader action.  Counsel for Raymond James claims they removed fees for services rendered in relation to the related action, Patricia Bassford v. Scott Bassford, No. 9:21-acv-02351, and redacted those entries from the billing log.  They also claimed to have removed and redacted entries related to time spent on Patricia's counterclaims and other discrete issues.  According to counsel for Raymond James, the total fee petition was thus reduced by $47,479.13.  While the court recognizes the propriety of Raymond James' calculations—and their authenticity in representing that the adjustments constituted what they believed were all the necessary adjustments to be made—prior district court precedent suggests that Raymond James's fees were not reduced enough.  The District of Maryland, for example, has struck entries for time spent on "review of unrelated pleadings, preparing and filing [the plaintiff's] motion to dismiss [a defendant's] counterclaims, and associated legal research."  Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc., 2017 WL 319521, at *3 (D. Md. Jan. 23, 2017).  The same court indicated it struck entries for "attorney-client communications."  See id. (quoting Hearing v. Minn. Life Ins. Co., 33 F. Supp. 3d 1035, 1044 (N.D. Iowa 2014)).  Put differently, the court explained that all hours spent "outside the circumscribed purpose of filing the interpleader action and achieving [the] ultimate goal of depositing the funds at issue in the Court registry" should be excluded.  Id.  Again, "a stakeholder's award 'should be

---

[1] The court's calculations can be found in Appendix A.

properly limited to the preparation of the petition for interpleader, the deposit of the contested funds with the court, and the preparation of the order discharging the stakeholder.'" Edward D. Jones, 2020 WL 7395968, at *2.

Based on guidance from those other courts, the court has, in its discretion, decided to omit certain entries from its calculations. The remaining entries, along with a general explanation for the entries omitted within each segment of timekeeping, can be found in Appendix A.

### B. Novelty and Difficulty of Questions Raised

District courts within this circuit have found that "[a]n interpleader action 'does not usually involve any great amount of skill, labor or responsibility.'" Edward D. Jones, 2020 WL 7395968, at *2 (quoting Del Conca, 2017 WL 3175567, at *4); see Bank of Am., N.A., 2017 WL 319521, at *3 ("Only a limited recovery is available to stakeholders because the interpleader process 'does not usually involve any great amount of skill, labor or responsibility.'") (quoting Lewis v. Atl. Rsch. Corp., 1999 WL 701383, at *7 (W.D. Va. Aug. 30, 1999)). However, in light of the intertwined nature of this case and the related probate proceeding, the court recognizes that this action presented more complicated issues than the typical interpleader action. For example, counsel for Raymond James included time spent considering the probate exception, and the court finds such efforts reasonable given that it was at the request of the court. Therefore, the court finds that the adjustments made under the preceding factor fairly reflect the extent of the adjustments needed, and no further adjustments are necessary to account for the relative difficulty (or lack thereof) of the issues raised.

### C. Skill Required

Given the amount of the interpleaded funds at stake, Raymond James has retained counsel with specialized experience in this jurisdiction and substantive area of law.

### D. Preclusion of Other Employment Opportunities

The court finds that this factor does not affect the calculation of the instant fee award.

### E. Customary Fee for Like Work

In his affidavit, Reeves affirms that he charged a rate between $395.25 and $416.50 per hour in this matter, which he represents is lower than his normal and customary rate. In his affidavit, Erb affirms that he charged a rate between $495.00 and $535.00 per hour in this matter, and he similarly represents that this fee is lower than his customary national rate. Counsel for Raymond James likewise affirm that the rates of the other attorneys and the paralegal were reduced from their full rates.

The reasonable hourly rate for purposes of the lodestar figure is generally the prevailing market rate for comparable services in the community in which the services were rendered. In re Mullins, 1996 WL 148527, at *3 (W.D. Va. Feb. 12, 1996). The relevant legal community is generally that in which the district court sits. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994). Prior cases within this district suggest that the rates applied in this case slightly exceed the typical regional rates. See, e.g., W.S. v. Daniels, 2019 WL 5448374, at *4–5 (D.S.C. Oct. 24, 2019) (finding that rates ranging from $275/hour to $400/hour fell within the range of reasonableness); Ellington v. Hayward Baker, Inc., 2019 WL 4058967, at *4–5 (D.S.C.

8

Aug. 28, 2019) (affirming hourly rates of $350/hour and $300/hour). Similarly, counsel's rates are slightly higher than those applied in other interpleader cases in this district. See, e.g., Edward D. Jones, 2020 WL 7395968, at *5 (finding reasonable the plaintiff's counsel's rates of $335/hour for partners, $295 to $305 for associates, and $180 to $190 for paralegals); Unum, 2015 WL 13229264, at *5 (finding reasonable the plaintiff's counsel's standard hourly rate of $200/hour and the paralegals' hourly rate of $80/hour). In such scenarios, other courts have reduced the hourly rate to be applied to account for the Fourth Circuit's preference against awarding significant attorney's fees in interpleader actions. See Pinnacle Bank v. Bluestone Energy Sales Corp., 2018 WL 6440887, at *4 (W.D. Va. Dec. 7, 2018) (reducing charged hourly rates of $650, $570, and $300 to $400, $325, and $250 for partners, senior associate, and paralegal, respectively); Citibank, N.A. v. Jericho Baptist Church Ministries, Inc., 2017 WL 2132033, at *7 (D. Md. May 17, 2017) (reducing charged rates of $550/hour for attorneys and $475/hour for paralegals to $475 and $150, respectively). On the other hand, "[w]hile evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." Rum Creek, 31 F.3d at 175 (citing Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir. 1993)). The court balances these principles by applying the rate at the lower end of counsel's range, which also aids the court in calculating the total reasonable rate. Therefore, the court applies a reasonable hourly rate of $495/hour for Erb; $395/hour for Reeves; $416.50/hour for Csercsevits; and $195.50/hour for Tuska-Butler. The court is satisfied that these rates fall within the range of reasonableness.

After considering the above factors, the court concludes that $50,616.75 in fees is reasonable. The court reaches this amount in fees by multiplying the hours identified as applicable in the billing log by the applicable billable rates determined above, depending on the attorney or paralegal completing the work. The court's calculations can be found in Appendix B.

### F. Attorney's Expectations at the Outset of Litigation

The entries in the billing log indicate that counsel for Raymond James was retained from the outset of the case to seek to dispose of the Raymond James funds and to have Raymond James be relieved of liability. The court thus finds this factor insubstantial in the instant case.

### G. Time Limitations Imposed by the Client or Circumstances

This factor does not affect the court's fee calculation.

### H. Amount in Controversy and the Results Obtained

The parties represented at the hearing on the motion for interpleader that the total amount of the Raymond James funds is substantial. As noted above, the court determined that Raymond James properly brought this interpleader action. Therefore, this factor does not weigh heavily on attorney's fees.

### I. Experience, Reputation, and Ability of the Attorneys

Reeves graduated from the University of South Carolina School of Law in 2005 and was admitted to the South Carolina Bar that same year. He is admitted to practice in the state and federal courts of South Carolina. He is currently a partner at Fisher & Phillips LLP. Erb graduated from the University of Wisconsin Law School in 1988 and was admitted to the Maryland Bar that same year. He is admitted to practice in the state

and federal courts of Maryland, in the federal courts of Michigan, and in the Fourth Circuit Court of Appeals. He has practiced law for over thirty years and is currently a partner at Fisher & Phillips LLP. The court finds that Reeves and Erb each possess the experience, reputation, and ability that aligns with the rates charged. It has no reason to doubt that the skill and ability of the other timekeepers is proportional to their charged rates, either.

### J. Undesirability of the Case Within the Legal Community

This factor does not affect the instant fee calculation.

### K. Nature and Length of the Professional Relationship

This factor does not affect the court's fee calculation.

### L. Attorneys' Fees Awards in Similar Cases

As previously discussed, the total amount requested by Raymond James in this interpleader action is higher than the amount recently determined reasonable by courts in this district and others. See, e.g., Edward D. Jones, 2020 WL 7395968, at *5 (awarding $22,759.75 after the plaintiff requested $35,000.00); Unum, 2015 WL 13229264, at *5 (awarding $2,464.13); Guardian Life Ins. Co. of Am. v. Engel, 2010 WL 1027614, at *3 (D.S.C. Feb. 22, 2010), report and recommendation adopted by 2010 WL 1009961 (D.S.C. Mar. 16, 2010) (awarding $5,000.00 after the plaintiff requested $12,159.16); Pinnacle Bank, 2018 WL 6440887, at *5 (awarding $33,606.71 after the plaintiff requested $109,635.51); Del Conca, 2017 WL 3175567, at *6 (awarding $9,092.60 after the plaintiff requested $18,000.00); Bank of Am., 2017 WL 319521, at *3 (awarding $19,699.51 after the plaintiff requested $64,263.19); Citibank, 2017 WL 2132033, at *7 (awarding $13,044.16 after the plaintiff requested $27,574.80).

Accordingly, the court finds that although the amount calculated by the court is lower than the amount sought by Raymond James, a total award of $50,616.75 is reasonable—indeed, it is still the highest amount of fees awarded among all the relevant interpleader cases that the court has reviewed. Pursuant to the court's prior order, these fees are to be deducted from the Raymond James funds.

### III.  CONCLUSION

For the reasons set forth above, the court **AWARDS** Raymond James $50,616.75 in expenses.

**AND IT IS SO ORDERED.**

                **DAVID C. NORTON**
                **UNITED STATES DISTRICT JUDGE**

**April 21, 2022**
**Charleston, South Carolina**